## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CASE NO.:

**KATARZYNA JARRETT,**

   *Plaintiff,*

**v.**

**APPFOLIO, INC.,**

   *Defendant,*

_____/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1.      Plaintiff, Katarzyna Jarrett (hereinafter "Plaintiff" or "Ms. Jarrett") brings this action against AppFolio, Inc. ("AppFolio") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.      Defendant's voluntary contact with Plaintiff in Florida made it foreseeable that it would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Brevard County, Florida.

## PARTIES

5.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Brevard County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6.      Defendant AppFolio is and was a "consumer reporting agency" and a "reseller" as provided for under the FCRA. *See* 15 U.S.C. § 1681a(f),(u).

7.      Defendant AppFolio is a corporation incorporated under the laws of the State of Delaware and maintains its principal place of business located at 70 Castilian Drive, Santa Barbara, CA 93117.

8.      AppFolio engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

9.      AppFolio sells tenant screening reports to property management companies and landlords for their use in determining prospective tenant's eligibility to rent an apartment or property.

## STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

10.      The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

11.      Congress found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on

consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

12.    The FCRA requires that each credit reporting agency provides consumers with access to the information sold about them to third parties and also provides consumers with the opportunity to review and dispute any inaccurate information in their consumer files. *See* 15 U.S.C. §§ 1681g(a), 1681i(a).

13.    Specifically, each credit reporting agency is required to provide consumers with copies of their consumer files.  *See* 15 U.S.C. § 1681g(a).

14.    The term "file" when used in connection with information on any consumer, means "all of the information on that consumer recorded and retained by the consumer reporting agency regardless of how that information is stored." *See* 15 U.S.C. § 1681a(g).

15.    The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

16.    The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency

receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

17.     The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

18.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1681n.

19.     If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

20.     If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

21.     A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

## **FACTUAL ALLEGATIONS**

22.     Ms. Jarrett is a victim of identity theft.

23.     In or around 2022 and 2023, an unknown individual obtained access to Ms. Jarrett's personal identify information, obtained fraudulent government identification cards using her information and began submitting apartment rental applications in her name.

24.    Ms. Jarrett has been a homeowner since January 2021 and did not have a need to rent apartments in 2022 or 2023.

25.    In or around July 2023, Ms. Jarrett discovered that she was a victim of identity theft and that the identity thief had successfully rented a number of apartments in her name, had been evicted from those apartments for non-payments resulting in Ms. Jarrett being contacted by debt collectors.

26.    In an attempt to remedy and prevent further instances of identity theft against her, Ms. Jarrett immediately contacted the West Melbourne Police Department to report the identity theft, completed the Federal Trade Commission ("FTC") Identity Theft Report and requested her credit reports from Equifax, Experian and Trans Union.

27.    Upon review of her credit reports, Ms. Jarrett discovered that AppFolio had accessed her Experian credit report on December 13, 2022, January 2, 2023, January 11, 2023, February 1, 2023, February 8, 2023 and February 21, 2023.

28.    On or about August 24, 2023, Ms. Jarrett began contacting AppFolio to request a copy of her consumer file.

29.    On or about August 24, 2023, AppFolio responded to Ms. Jarrett's request for her consumer file via email asking that she provide a copy of an FTC identity theft report and a government-issued identification card in order to "submit a dispute for ... information due to identity theft."

30.     On or about August 25, 2023, Ms. Jarrett informed AppFolio that she was requesting a copy of her consumer reports to determine if anything needed to be disputed and asked how she could obtain her consumer report.

31.     On or about August 25, 2023, AppFolio requested the name or phone number of the property management company where she recently applied.

32.     On or about August 28, 2023, Ms. Jarrett further reiterated to AppFolio that she was a victim of identity theft and has not applied for any rentals and asked AppFolio if it could locate her file with her name.

33.     On or about August 28, 2023, AppFolio informed Ms. Jarrett that it did not have a record of her being screened through AppFolio based on the information she provided.

34.     On or about September 16, 2023, Ms. Jarrett provided AppFolio with a list of dates when AppFolio accessed her Experian credit report and the list of addresses that Ms. Jarrett was aware were being used by the identity thief.

35.     On or about September 19, 2023, nearly a month after Ms. Jarrett initially requested her consumer file, AppFolio informed Ms. Jarrett via email that it had located her consumer file and again asked Ms. Jarrett to provide a copy of an FTC identity theft report and a government identification card in order to "submit a dispute a dispute for information due to identity theft."

36.     Again, Ms. Jarrett reiterated that she needed her consumer report in order to determine what information needed to be disputed.

37.    On or about September 22, 2023, AppFolio requested a copy of Ms. Jarrett's government-issued identification card or social security card to verify her identity despite Ms. Jarrett previously providing her driver's licsense with her initial request on August 24, 2023.

38.    On or about September 29, 2023, Ms. Jarrett again provided AppFolio with her driver's license through a secure link provided to her by AppFolio and again asked for her consumer report.

39.    On or about October 13, 2023, Ms. Jarrett mailed a letter requesting her consumer report from AppFolio and expressed her frustration over not being able to obtain her consumer reports specifically stating that she has not been receiving responses to her emails and has not been able to speak to anyone when she contacts AppFolio by telephone.

40.    On or about October 16, 2023, AppFolio emailed Ms. Jarrett requesting an FTC identity theft report in order to "proceed with information blocking."

41.    On or about October 18, 2023, Ms. Jarrett uploaded her FTC identity theft report and received a successful submission confirmation from AppFolio.

42.    However, on or about November 1, 2023, AppFolio emailed Ms. Jarrett again requesting her FTC identity theft report "in order to provide you with a Consumer Disclosure due to identity theft."

43.     The FCRA does not require consumer reporting agencies to obtain identity theft reports from identity theft victims in order to provide them with their consumer files.

44.     On or about November 2, 2023, after Ms. Jarrett informed AppFolio that she has already successfully uploaded the requested documents, AppFolio stated that it was not able to locate her FTC identity theft report and requested that she submitted it again.

45.     With each of its email communications to Ms. Jarrett, AppFolio included the Consumer Financial Protection Bureau's summary of rights under the FCRA which states that:

> **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free.

46.     However, as a result of AppFolio's faulty procedures, it failed to provide Ms. Jarrett with her consumer reports despite Ms. Jarrett's multiple requests and her complying with every request to verify her identity made by AppFolio.

47.     In 2024, Ms. Jarrett again contacted AppFolio to request her consumer reports from AppFolio.

48.     On or about May 14, 2024, AppFolio again requested that Ms. Jarrett to provide a copy of an FTC affidavit and a government identification card in order to receive her consumer reports.

49.     On or about May 15, 2024, Ms. Jarrett once again complied with AppFolio's request and submitted the requested documents.

50.     On or about May 15, 2024, AppFolio provided Ms. Jarrett with a list of seven entities it had provided Ms. Jarrett's consumer reports to in association with fraudulent applications submitted by the identity thief.

51.     On or about June 13, 2024, AppFolio finally mailed Ms. Jarrett her consumer file which was roughly nine months after Ms. Jarrett first contacted AppFolio to request her file.

52.     The information AppFolio provided to Ms. Jarrett contained pertinent information about the identity thief including what the identity thief looks like from the image on the fraudulent driver's license, that the identity thief was also using Ms. Jarrett's information for employment and to obtain deposit accounts which would have assisted Ms. Jarrett during her investigation into the extent of the identity theft being committed against her.

53.     If AppFolio provided this information to Ms. Jarrett in a timely manner when she first requested it in August 2023, she would have been able to provide it to the West Melbourne and Hillsborough police departments nine months earlier to assist them with their investigation into the identity theft.

54.     As a result of AppFolio's conduct, Ms. Jarrett has suffered actual damages including emotional distress and lost time and labor.

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681g(a)

55.     Plaintiff incorporates by reference paragraphs 1-54 as if fully stated herein.

56.     At all times relevant hereto, AppFolio is and was a "consumer reporting agency" as provided for under the FCRA.

57.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

58.     During the relevant time frame, AppFolio received Plaintiff's requests for a copy of her consumer report.

59.     AppFolio violated 15 U.S.C. § 1681g(a) by failing to provide Plaintiff with all information in her consumer file upon her request in 2023.

60.     AppFolio's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

61.     Alternatively, AppFolio negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against AppFolio in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

62.        Plaintiff demands a trial by jury on all issues so triable.

Dated: December 9, 2024                    *Respectfully submitted,*

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
*Attorneys for Plaintiff*